**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JANIECE MOORE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:05CV684MLM** |
| | ) | |
| **CINDY PRUDDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner, Janiece Moore. Doc. 2. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 8. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 10.

## I.
## BACKGROUND

Petitioner, Jermaine Thurman, Victor Mooring, Shawntell Lucas, Dajuanda Williams, Tory Cooper, and Latoya Wilson were charged by indictment as follows: Count I, the Class A felony of assault in the first degree in that on March 24, 1998, Petitioner and the other named defendants knowingly caused serious injury to R.H. by kicking her, pouring hot water and bleach on her, and/or by striking her with a handgun; Count II, armed criminal action in that Petitioner and the other named defendants committed the felony of assault first degree as charged in Count I by, with, and through the use, assistance, and aid of a deadly weapon; Count III, the felony of forcible sodomy in that on March 24, 1998, Petitioner and the other named defendants had deviate sexual intercourse with R.H.

by the use of forcible compulsion; Count IV, armed criminal action in that Petitioner and other named defendants committed the felony of forcible sodomy as charged in Count III by, with, and through the use, assistance, and aid of a deadly weapon; Count V, the class C felony of felonious restraint in that on March 24, 1998, Petitioner and other named defendants restrained R.H. unlawfully and without consent so as to interfere substantially with her liberty and exposed R.H. to a substantial risk of serious physical injury; and Count VI, armed criminal action in that Petitioner and the other named defendants committed the felony of felonious restraint as charged in Count V by, with, and through the use, assistance, and aid of a deadly weapon. Resp. Ex. B at 6-8.

Petitioner was tried by a jury. At Petitioner's trial R.H., the victim, testified that she began dating Victor Mooring in January 1998 while Mooring resided at 3416 Oregon at which address Petitioner also resided; that R.H. ended this relationship in March when she discovered his involvement with a gang called Gangster Disciples; that on March 19, 1998, R.H. performed an exotic dance at the residence on Oregon in the presence of Jermaine Thurman, who was Petitioner's boyfriend, and Mooring; that on March 24, 1998, R.H. went to the residence to retrieve personal belongings; that when she arrived at least four other individuals were present including Petitioner; that Mooring answered the door and then he and Darrell Jones dragged her to the basement asking her to join the gang; and that R.H. said she would not join the gang. Resp. Ex. A, Trial Transcript ("Tr.") at 212-214, 224-228, 280-81.

R.H. further testified that Petitioner then came to the basement and initiated a fight with her; that while the two women were fighting other people present in the house came to the basement; that Petitioner asked Tory Cooper, who was watching, to hand her a gun; that Cooper then loaded a gun and handed it to Petitioner; that Petitioner proceeded to hit R.H. twice in the head with the gun and told someone, "you know what you have to do, so just kill her"; that Petitioner watched as Mooring

2

and Jones tied R.H.'s arms and legs with an extension cord; that more gang members came into the basement and someone stuffed a sock into R.H.'s mouth; that the gang members then rolled dice to see whether male or female members of the gang would torture R.H. first; that then one of the women poured scalding water on R.H.; that bleach was then poured over R.H. while she was asked if she wanted those present to "clean her up"; that gang members then proceeded to alternate pouring scalding water and bleach over R.H.; that Petitioner proceeded to hit R.H. twice in the head; and that Petitioner then left the house and told Jones to take over. Tr. at 227-230; 232-36.

R.H. continued to testify that at that point one of the women went upstairs and brought a broomstick to the basement; that Mooring removed R.H.'s shorts and the women inserted the stick into R.H.'s rectum; that Jones showed R.H. pictures of her family and told her that if they released her they knew what her children looked like; that those present continued to pour scalding water and bleach over her for several hours; that they then cut her leg open with a barbeque fork; that when Petitioner returned from work she and some of the gang members discussed "dumping" R.H. somewhere; that one of the men threw a blanket over R.H. and tied an extension cord around her waist; that Petitioner then ordered the men to stand R.H. up; that Petitioner then ran across the room and kicked R.H. down; and that one of the gang members proceeded to insert the broomstick into R.H.'s rectum and Petitioner said "put it deeper." Tr. at 238-40, 242-43, 245-46, 248, 267, 272.

R.H. also testified that as the gang was getting ready to transport her Mr. and Mrs. Thurman, who were parents of one of the members of the gang, arrived at the house and went down to the basement at which time Petitioner was standing over R.H.; that Mr. and Mrs. Thurman proceeded to call the police; that as they were carrying R.H. upstairs someone punched her in the face; and that Mr. and Mrs. Thurman then took R.H. to Lutheran Medical Center from which she was transferred to Barnes Jewish Hospital to receive care in the burn unit. Tr. at 247, 255-56, 291-93.

Petitioner testified that she went to work on the day in question; that she was at home during lunch; and that she returned home from work between 5:00 and 5:30 p.m. Tr. at 356-60, 365. Petitioner further testified that she went to Lutheran Medical Center where she saw six police cars and did not go in because she was scared. Tr. at 369. Petitioner testified that she knew " that they were gonna catch us eventually so we went home." Tr. at 271.

Petitioner's father testified that on the day in question he was living in the house on Oregon; that he saw Petitioner at the residence about thirty or forty minutes after he woke up at 11:30 a.m.; that when Petitioner got home she and R.H. had a fight in the basement; that while they were fighting he heard R.H. yell; that he told Petitioner and R.H. to stop fighting; that Petitioner then "put the girl out of the house"; that R.H. then came back into the house "with the other guys"; and that Petitioner then left. Tr. at 428-30. Petitioner's employer testified that on the day in question Petitioner reported to work at 8:10 a.m. and that the employer dropped Petitioner off at her home at 5:30 p.m. Tr. at 402, 414. Two of Petitioner's co-workers testified that they saw Petitioner at approximately 5:00 p.m. when Petitioner arrived at a job site with their employer. Neither of the co-workers could recall the date on which this took place. Tr. at 421-22, 425-26.

Petitioner was found guilty of assault in the first degree and felonious restraint and found not guilty of the remainder of the charges against her. The court sentenced Petitioner to twenty-five years for the assault count and five years for the felonious restraint count with the sentences to run concurrently with one another. Resp. Ex. B at 239, 246.

Petitioner filed a direct appeal in which she raised the following issue: the trial court erred in refusing to give one of Petitioner's tendered alibi instructions. Resp. Ex. C at 13. By Order dated September 19, 2000, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. E.

On February 26, 2001, Petitioner filed a pro-se post-conviction relief motion. Resp. Ex. F at 3. Counsel was appointed and filed an Amended Motion to Vacate, Set aside or Correct Judgment and Sentence. Resp. Ex. F at 27. The motion court held an evidentiary hearing on January 10, 2003, and on May 28, 2003, denied Petitioner's post-conviction relief motion. Resp. Ex. F at 79-95. Petitioner filed an appeal of the motion court's decision in which she raised the following issue: Petitioner was denied effective assistance of counsel because her trial counsel failed to investigate and call Victor Mooring, Dajuanda Williams, and Latoya Wilson. Resp. Ex. H at 7. On April 20, 2004, the Missouri appellate court issued an Order denying the appeal of Petitioner's post-conviction relief motion. Resp. Ex. J. According to Respondent, the Missouri appellate court issued the mandate on May 17, 2004.

On April 28, 2005, Petitioner filed a § 2254 Petition in which she raises numerous issues including the following grounds for relief.[1]

(1)  The trial court erred in failing to give Petitioner's tendered alibi instructions.

(2)  Petitioner received ineffective assistance of counsel because trial counsel failed to "do certain things that [Petitioner] asked him to do."

---

[1]  The court will give Petitioner the benefit of the doubt and assume that she intends to allege as grounds for relief pursuant to § 2254 every argument which he makes in her Petition and in the pages attached to her Petition. On page 5 of her Petition, Petitioner identifies two grounds for habeas relief; on pages attached to her Petition designated as 9d-1 and 2 Petitioner identifies nineteen grounds for habeas relief; on additional attached pages which she designates as 1131-34 Petitioner states twenty-one grounds for relief; and on attached pages identified as 12-1 through 12-4 Petitioner identifies six additional grounds for relief with the item identified as ground 5 having fourteen separate grounds. As the court finds below that Petitioner has procedurally defaulted all issues with the exception of Grounds 1 and 2 as set forth above the court need not extrapolate all of the allegations of Petitioner's § 2254 Petition.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"),

applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the

requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The

Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant

a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the

merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue

only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . .  clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . .  clearly established
> Federal Law, as determined by the Supreme Court of the United
> States."  Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court decides
> a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at  412-13.

Williams further holds that the writ will not issue merely because the federal court concludes

that the relevant state-court decision erroneously or incorrectly applied clearly established federal law.

Id. at 411.  "'Rather the application [by the state-court] must also be unreasonable.'"  Copeland v.

Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 410).  See also Siers

v. Weber, 259 F.3d 969, 973 (8th Cir. 2001), cert. denied, 534 U.S. 1138 (2002).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. <u>See also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. <u>Williams</u>, 529 U.S. at 413. <u>See also</u> <u>Perry v. Johnson</u>, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in <u>Perry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Id.</u> at 793 (citing <u>Williams</u>, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." <u>Atley v. Ault</u>, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d 497, 500

(8th Cir. 2001). The state court's decision "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001), cert. denied, 535 U.S. 934 (2002). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.") (citations omitted), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 125 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

[W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999). The court further held in Brown that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id. at 462.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently

was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 866 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

### III.
### LEGAL FRAMEWORK APPLICABLE TO DEFAULT, EXHAUSTION AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S.

386, 388-89 (2004). <u>See</u> <u>also</u> <u>Coleman</u>, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." <u>Dretke</u>, 541 U.S. at 393 (citing <u>Murry v. Carrier</u>, 477 U.S. 478, 496 (1986); <u>Schlup v. Delo</u>, 513 U.S. 298, 298 (1995)). A habeas petitioner who wishes to have a procedurally defaulted claim considered on its merits "'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" <u>McCoy v. Lockhart</u>, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992)). Actual innocence is required to meet the miscarriage-of-justice exception. <u>See</u> <u>Sweet,</u> 125 F.3d at 1152 (citing <u>Schlup</u>, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. <u>See</u> <u>Dretke</u>, 541 U.S. at 393. In <u>Dretke</u>, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." <u>Id.</u> at 393-94. In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." <u>Sweet,</u> 125 F.3d at 1152 n.9 (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no

reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. In Reed v. Ross, 468 U.S. 1 (1984), "the Supreme Court recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." McKinnon v. Lockhart, 921 F.2d 830, 833 (8th Cir. 1990) (citing Reed, 468 U.S. at 16). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. Id. at 404-405.

In Duncan v. Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982)). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting

13

Darr v. Burford, 339 U.S. 200, 204 (1950)).  As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." (citing Rose, 455 U.S. at 515-516; Darr, 339 U.S. at 204). The Court in Duncan further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation.  533 U.S. at 180.  Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.  The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued.  At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

The limitation period of § 2244(d)(1) runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. Id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery v. Ault, 312 F.3d 948, 950 (8th Cir. 2002) (citing Peterson, 200 F.3d at 1203). It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)). The appeal of a post-conviction relief motion remains pending until the appellate court issues its mandate. Canaday v. Moore, 2005 WL 1278523, at *2 (W.D. Mo. May 27, 2005) (citing 299 F.3d 981, 982-83 (8th Cir. 2002). For a Missouri defendant, " judgment in a criminal case [ ] becomes final for purposes of appeal when sentence is entered, State v. Lynch, 679 S.W.2d 858, 860 (Mo. banc 1984), and an appeal must be filed within ten days thereafter. State ex rel. Wagner v. Ruddy, 582 S.W.2d 692, 693 (Mo. banc 1979). The same time limit applies to those cases where an appeal is permitted from a guilty plea. State v. Werbin, 597 S.W.2d 663, 664 (Mo.App.1980)." State v. Harris, 863 S.W. 699 (Mo. Ct. App. 1993).

United States Supreme Court Rule 13 provides that "a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it

is filed with the Clerk of this Court within 90 days after entry of judgment." A state court conviction becomes final 90 days after the denial of discretionary review by the highest state court.  Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000) ("[O]ne-year limitations period for filing habeas petition was tolled while petitioner sought post-conviction relief in state court, from date when petitioner filed his motion for post-conviction relief up until date when Missouri Court of Appeals affirmed the denial of post-conviction relief.").  The Eighth Circuit explained, in Williams, 299 F.3d at 983, as follows:

> We stated in [Peterson v. Gammon, 200 F.3d 1202 (8th Cir.2000)] that a post-conviction application remains "pending" for the entire period during which a notice of appeal "would be timely, assuming such a notice was in fact filed." See id. at 1205. ... Peterson did not say that the statute of limitations was tolled only if the petitioner filed a timely appeal; it said that it was tolled if he or she did so. Although we have not answered the question directly, those circuit courts that have addressed it have concluded that the application is "pending" (and thus the limitations period is tolled) during the appeal period, even if the petitioner does not appeal. See Gibson v. Klinger, 232 F.3d 799, 803-04 & n. 1 (10th Cir.2000); Swartz v. Meyers, 204 F.3d 417, 420-24 (3d Cir.2000).

 In regard to issues not raised in her State appeals Petitioner states that all of the grounds presented in her § 2254 Petition "have been previously raised, but not discussed in as much detail." Doc. 1 at 6.  Respondent correctly argues, however, that Petitioner has procedurally defaulted all of the issues which she raises in her § 2254 Petition with the exception of Grounds 1 and 2, as set forth above, as Grounds 1 and 2 are the only issues raised by Petitioner  before this court  which Petitioner also raised in her direct appeal or in the appeal of her post-conviction relief motion. Petitioner has not suggested cause and/or prejudice to excuse her procedural default.[2]   See Dretke, 541 U.S. at 388-

---

[2]     In the appeal of her post-conviction relief motion Petitioner alleged ineffective assistance of trial counsel because counsel failed to call Victor Mooring, Dajuanda Williams, and Latoya Wilson as witnesses.  In her § 2254 Petition alleges generally that counsel did not do what she wanted him to do.  Doc. 2 at 12-3 and 12-4. In Strickland v. Washington, 466 U.S. 668, 690 (1984), the United States Supreme Court held that a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have

89. As such, the court finds that Petitioner has procedurally defaulted all grounds for relief which she alleges in her § 2254 Petition with the exception of Grounds 1 and 2. See Sweet, 125 F.3d at 1149.

Respondent further contends that Petitioner's § 2254 Petition should be dismissed as untimely unless the 1-year statute of limitations was tolled until the issuance of the mandate of the Missouri appellate court in Petitioner's post-conviction relief appeal.[3] In support of this position Respondent notes that the envelope containing Petitioner's § 2254 Petition is postmarked April 26, 2005; that the decision of the Missouri appellate court regarding the appeal of Petitioner's post-conviction relief

---

been the result of reasonable professional judgment." The Eighth Circuit held in Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994), that "a habeas petitioner must have raised both the factual and legal basis for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review." See also Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004), cert. denied, 125 S.Ct. 902 (2005). "A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements. Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review." Flieger, 16 F.3d at 885 (citations omitted). As Petitioner has failed to identify the acts or omissions which allegedly could form the basis of her ineffective assistance of counsel claims and because her ineffective assistance of counsel claims are merely general and conclusory allegations, these claims must fail. See also Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); Estes v. United States, 883 F.2d 645, 647 (8th Cir. 1989). In the interest of justice, however, the court will address Petitioner's claim of ineffective assistance of counsel to the extent she alleged in her State appeal that counsel failed to call as witnesses designated individuals.

[3]      It is not clear for Missouri prisoners whether the 1-year statute of limitations applicable to § 2254 petitions commences to run at the time the State court issues the mandate or whether it commences to run ten or fifteen days after the appellate court issues judgment. Missouri Rule 30 provides that a notice of appeal must be filed in a criminal matter no later than ten days after the judgment or order appealed from becomes final. Missouri Rules 83.02 and 83.04 provide that a defendant can apply for transfer to the Missouri Supreme Court within fifteen days of the date upon which the opinion is filed. It has been held that under Missouri law a criminal judgment "becomes final for purposes of appeal when a sentence is entered, and an appeal must be filed within 10 days thereafter." State v. Harris, 863 S.W.2d 699, 700 (Mo. Ct. App. 1993). Respondent notes that the issue of whether the 1-year statute of limitations is tolled until the issuance of mandate is currently pending before the Eighth Circuit in Payne v. Kemna, No. 04-3856.

motion is dated April 20, 2004; and that the mandate issued on May 17, 2004. This court's records reflect, however, that Petitioner's § 2254 Petition was filed on April 28, 2005.

In any case, this court notes that the 1-year statute of limitations applicable to § 2254 petitions commenced running December 18, 2000, which is ninety days after the Missouri appellate court affirmed the judgment against Petitioner in her direct appeal.[4] See § 2244(d)(1); Williams, 299 F.3d at 983. Additionally, the 1-year period was not tolled for the sixty-nine days from December 18, 2000, until Petitioner filed her post-conviction relief motion on February 26, 2001. See Beery, 312 F.3d at 950. The 1-year statute of limitations was tolled as of February 26, 2001, and commenced to run no later than May 17, 2004, the date the mandate issued. As Petitioner filed her Petition April 28, 2005, it was filed in excess of the 1-year statute of limitations even assuming, arguendo, that the statute was tolled until the filing of the mandate in Petitioner's post-conviction relief appeal. Petitioner's § 2254 Petition, therefore, was not timely filed. The court will, alternatively, address the merits of claims not procedurally defaulted by Petitioner.

## IV.
## DISCUSSION

**Ground 1 - The trial court erred in failing to give Petitioner's tendered alibi instructions:**

Petitioner contends that the trial court refused her tendered alibi instructions even though it believed there was evidence of an alibi. Petitioner contends that the court's reasoning in this regard was that it believed that Petitioner's "actual presence at or near the time of the specific acts that [were alleged to have occurred] was not necessary for criminal culpability." Doc. 2 at 1133 (quoting Tr. at

---

[4]　Records before this court do not indicate that Petitioner sought transfer to the Missouri Supreme Court in regard to either her direct appeal or the appeal of her post-conviction relief motion despite the fact that Petitioner checked a box indicating that she filed an "appeal to the highest state court having jurisdiction" over her post-conviction relief motion. Doc. 1 at 4.

474).  Petitioner further argues that there was evidence that she was at work during the entire time that the victim was assaulted and restrained and that even though presence would not normally be required to find criminal culpability where defendants are jointly charged, in Petitioner's case the State had to prove that she was present for sometime during the commission of the crimes.  Petitioner contends that a trial court is required to give an alibi instruction if requested and if the evidence supports it.  Id. at 1133-34.

Petitioner tendered two alibi instructions which were rejected by the trial court.  The first of these instructions stated that one of the issues was whether Petitioner was present at the Oregon residence between 12:00 p.m. and 5:00 p.m. on March 24, 1998; that the State had the burden of proving beyond a reasonable doubt that Petitioner was present at the time and place the offense was alleged to have been committed; and that if the jury had reasonable doubt in this regard that it must find Petitioner not guilty.  The second tendered alibi instruction stated that one of the issues was whether Petitioner was present at the Oregon residence between 1:00 p.m. and 5:p.m. on March 24, 1998; that the State had the burden of proving beyond and reasonable doubt that Petitioner was present at the Oregon residence at the time the offense was alleged to have committed; and that if the jury found reasonable doubt that Petitioner was present at the Oregon residence between 1:00 p.m. and 5:00 p.m. on the day in question and that Petitioner did not act together or aid or encourage the other named defendants in committing the offenses that the jury must find Petitioner not guilty.  Resp. Ex. B at 191-92.  The Missouri appellate court affirmed the judgment of the trial court without a written opinion in regard to the issue raised in Petitioner's Ground 1.  The trial court, however, stated on the record its reasons for rejecting Petitioner's tendered alibi instructions.  Upon rejecting these tendered instructions the trial court held as follows:

Court gave considerable thought to the general proposition that if they are supported by the evidence, they are a matter to be instructed on. The Court does believe that there was alibi supported by the evidence.

However, the defendant is charged with acting in concert with other defendants and after review of case law the Court has concluded that where the defendant's presence is not necessary to guilt, the alibi instruction is inappropriate.

And based on the charge of - based on the method of charging the defendant, the acting in concert, the Court believes that defendant's actual presence at or near the scene of the time of the specific acts that are alleged to have occurred is not necessary for criminal culpability in this matter and that's the basis for the Court's conclusion.

Tr. at 473-74.

First, the court notes that Petitioner presented witnesses to support her alibi that she was at work during the time period in question. Second, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).

Upon rejecting Petitioner's tendered alibi instructions the trial court relied upon its interpretation of State law; the court noted that State law did not require Petitioner's actual presence to prove her guilt. The court finds, therefore, that Petitioner does not assert a constitutional violation,

but merely requires the court to interpret and apply Missouri law. As such, Petitioner's claim is not cognizable under § 2254. See Poe, 39 F.3d at 207.

Additionally, Missouri law provides that an alibi instruction need not be given where the evidence does not support a conclusion that the defendant was somewhere else at the time the crime was committed. State v. Rickman, 920 S.W.2d 615, 617 (Mo. Ct. App. 1996). In Petitioner's case evidence was presented that Petitioner was present while the victim was assaulted; that she instructed others to do what they had to do to the victim; that Petitioner instructed Mooring to tie the victim; and that upon Petitioner's departure she instructed Jones to take over while Petitioner left. Moreover, Petitioner testified that she went to the Oregon residence during her lunch break at 12:45 p.m. on the day in question; that she went down to the basement; that she and the victim fought; and that she left the house at 1:20 p.m. Resp. Ex. A at 356-60. Petitioner further testified that when she returned to the residence between 5:00 and 5:30 p.m. she heard a lot of noise coming from the basement and that when she went down into the basement she saw the victim laying on the floor with a blanket over her. Resp. Ex. A at 365-66.

Moreover, upon concluding that Petitioner was not entitled to her tendered alibi instructions the trial court considered the elements of the crime with which Petitioner was charged and concluded that the instructions submitted to the jury required the prosecution to prove those elements. It further based its decision on the evidence presented by both the prosecution and the defense. These considerations are consistent with the requirements of federal law which provide that a trial court has wide discretion upon instructing the jury. United States v. Wright, 246 F.3d 1123, 1128 (8th Cir.2001). Instructions are proper if "'taken as a whole, [they] fairly and adequately submitted the issues to the jury.'" United States v. Florez, 368 F.3d 1042, 1044 (8th Cir.2004) (quoting United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001)). The Eighth Circuit has found instructions

sufficient where they "accurately and adequately state the applicable law." United States v. Clapp, 46 F.3d 795, 803 (8th Cir.1995). The Eighth Circuit has further held that instructions comply with the due process clause when then they encompass the presumption of innocence, the government's burden of proof, and reasonable doubt. See United States v. Bowman, 798 F.2d 333, 336 (8th Cir. 1986). In Petitioner's case the trial court charged the jury that it was the State's burden to prove beyond a reasonable doubt every element necessary to constitute the crime with which Petitioner was charged. Petitioner's presence was not necessary for her to be found guilty as charged because she was charged with accessory liability.[5] As such, the instructions submitted to the jury correctly reflected the elements of the crimes with which Petitioner was charged. Alternatively, to the extent that Petitioner's Ground 1 relies on constitutional rights, the court finds that the State court's ruling in regard to the issue raised by Petitioner in Ground 1 is not contrary to federal law, that it is a reasonable application of federal law, and that the State court reasonably applied federal law to the facts of Petitioner's case. See Florez, 368 F.3d at 1044; Clapp, 46 F.3d at 803; Bowman, 798 F.2d at 336.

**Ground 2- Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and call Victor Mooring, Dajuanda Williams, and Latoya Wilson:**

As stated above although Petitioner generally alleges in her § 2254 Petition that her counsel failed to "do certain things" which Petitioner asked her to do, the court will address Petitioner's claim

---

[5]     Instruction #5 stated as follows:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

Resp. Ex. B at 174.

as raised in her post-conviction relief appeal that counsel failed to investigate and call the above

named individuals.  In support of Ground 2 Petitioner has submitted Investigative Reports, each dated

December 23, 2002, which state that Victor Mooring and Dajuanda Williams reported that they

would have testified on Petitioner's behalf.  Doc. 1, Exs. 5-7. The Investigative Report regarding an

interview with Mooring states that Mooring acknowledged that Petitioner fought with the victim and

that the victim was beaten "pretty bad." Doc. 1, Ex. 5.  The Investigative Report regarding an

interview with Williams states that Williams reported that Petitioner "didn't say anything to

encourage the others to beat [R.H.] up and she didn't think there was any way [Petitioner] could have

known what was going to happen after she left." Doc. 1, Ex. 6.

Upon addressing this issue the Missouri appellate court held as follows:

> Movant is only entitled to post-conviction relief based on her charges of
> ineffective assistance of counsel if she showed by a preponderance of the evidence
> that: (1) her trial counsel failed to use the customary skill and diligence of a
> reasonably competent attorney under similar circumstances, and (2) counsel's
> deficient performance prejudiced her.  Middleton v. State, 103 S.W.3d 726, 732 (Mo.
> banc 2003).  There is a strong presumption that counsel provided  competent
> assistance.  Id.  To prove the first element in an ineffective assistance of counsel
> claim, Movant must show that counsel's representation fell below an objective
> standard of reasonableness. To establish the second element, she must demonstrate
> a reasonable probability that, but for counsel's errors, the result of the proceeding
> would have been different. Id. at 733.

> Trial counsel's decisions regarding calling witnesses are matters of trial
> strategy and generally do not support a claim for ineffective assistance of counsel.
> Helmig v. State, 42 S.W.3D 658, 667 (Mo. App. E.D. 2001).  To prevail on a claim
> of ineffective assistance based on the trial counsel's failure to call a witness, Movant
> was required to show that the witnesses would have testified if called, and that their
> testimony would have aided her case.  State v. Burrell, 944 S.W.2d 948, 953 (Mo.
> App. 1997).  Counsel cannot be ineffective would not have unqualifiedly supported
> Movant's position.  Leisure v. State, 828 S.W.2d 872, 875 (Mo. banc 1992).

> Movant's point relied upon states that trial counsel was ineffective for "failing
> to investigate and call Victor Mooring, Djuan[d]a Williams, and Latoya Wilson."  She

alleges that their testimony would have revealed "crucial" information that she had "no involvement," as an accessory or otherwise, in the assault of the victim.

First, we will address concerns with Movant's brief. Although she now alleges on appeal that certain witnesses would have testified that she had no involvement in the incident, the record reveals that Movant's defense at trial was that she committed only a third-degree assault against the victim. Movant's current argument is inconsistent with the record, inconsistent with the witnesses' statements, and asks us to reconsider the entire strategy of trial counsel, not only his choice of witnesses. Trial counsel's goal, according to his testimony, was to concede that Movant committed a less serious offense. This strategy was reasonable based on the record, and Movant failed to prove that she was prejudiced by it or that trial counsel did not act as a reasonably competent attorney would under the circumstances.

Moreover, trial counsel testified that he had little memory or his precise reason for declining to call Mooring, Williams, and Wilson, but that as a general matter, he does not call co-defendants to testify. Decisions to not call for testimony of co-defendants have been recognized as matters of trial strategy and not grounds for ineffective assistance of counsel claims. See State v. Pounders, 913 S.W.2d 904, 908 (Mo. App. 1996) and Pullen v. State, 895 S.W.2d 253, 255 (Mo. App. 1995).

Next, Movant's point on appeal alleges that counsel failed to call Williams, Wilson, and Mooring. Wilson's name, however, is absent from the record of the hearing. Moreover, her statement, if she made one, was not submitted into evidence, as were the statements of Williams and Mooring. Therefore, as a preliminary matter, we find that Movant has failed to prove by preponderance of the evidence that Wilson would have testified and her testimony would have aided Movant. We next consider trial counsel's exclusion of Williams and Mooring.

Both Williams and Mooring were involved with the victim's assault, and both were co-defendants. In lieu of live testimony, their statements to the police were submitted for the court's review at the motion hearing. These statements were made on December 23, 2002. Movant was convicted and sentenced in the summer of 1999. In their statements, both co-defendants acknowledged that Movant committed a third-degree assault against the victim, but stated that was the extent of her involvement. Both also indicated that they would have testified on Movant's behalf, had they been asked to do so at the trial.

Movant fails, however, to establish that the witnesses' statements would have aided her case. Williams stated that she arrived at the residence where the assault took place after Movant's arrival. Consequently, she could not testify regarding what occurred prior to her arrival. Moreover, she also stated that she left before Movant

arrived home from work and did not know what occurred after her departure. Williams did not provide specific time frames. Because Williams conceded that she was not present for much of the time Movant was at the residence, Movant was not prejudiced by her exclusion.

Mooring's statement was similarly unhelpful to Movant. His statement alleged that Movant came home around 10:45 a.m. and engaged in a fistfight with the victim which lasted five to 10 minutes. Movant then left. Mooring stated that he took a shower, which lasted about 30 minutes. He stated that after his shower, the victim was in the living room and had been beaten badly. He then stated that she was taken to the hospital. This statement is inconsistent with the evidence presented at the trial. The evidence is clear that the assault lasted several hours and involved numerous people. By Mooring's account, it was over in less than an hour. Movant was not prejudiced by trial counsel's failure to call Mooring. Moreover, it cannot be said that Mooring's testimony would have unqualifiedly supported Movant's position. See Leisure, 828 S.W.2d at 875. Indeed, such inconsistencies, had they occurred at trial, could have been detrimental to Movant's case.

Based on the evidence presented at hearing, the motion court's finding was not clearly erroneous. We find no error in the motion court's denial of post-conviction relief because we agree that Movant failed to show her trial counsel was ineffective for declining to call Mooring, Williams and Wilson. Movant's point is denied.

Resp. Ex. J at 2-5.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in Petitioner's Ground 2. Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome

this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, as follows:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. See Cronic, supra, at 658-659, 104 S.Ct. 2039; see also Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Gideon v. Wainwright, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. Cronic, supra, at 659, n. 26, 104 S.Ct. 2039.

Id.

As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547, 1556 (8th Cir. 1994). "Strategic decisions

'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." <u>Strickland,</u> 466 U.S. at 690.

First, the court finds that the standard applied by the State appellate court upon determining whether Petitioner received ineffective assistance of counsel is identical to that set forth in <u>Strickland</u>, although the State court did not specifically cite <u>Strickland</u>. Moreover, in agreement with the State appellate court, this court notes that in choosing not to call Williams and Mooring trial counsel made a strategic decision. As stated in <u>Battle</u>, 19 F.3d at 1556, such a decision of trial counsel is "virtually unchallengeable." In further agreement with the State court, this court notes that there was overwhelming evidence that the assault lasted several hours and that ultimately Mooring's testimony as well as William's testimony would not have made a difference in the jury's verdict. In regard to Wilson, Petitioner did not present evidence to the motion court that Wilson's testimony would have resulted in a different outcome nor does she suggest such evidence to this court. This court finds, therefore, that the State court's finding in regard to the issue raised in Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. <u>See</u> <u>Strickland</u>, 466 U.S. at 688-89; <u>Hanes</u>, 240 F.3d at 698; <u>Hall</u>, 296 F.3d at 694; <u>Battle</u>, 19 F.3d at 1556. As such, the court finds that Petitioner's Ground 2 is without merit and that it should be dismissed.

## V.
## CONCLUSION

For the reasons fully set forth above the court finds that Petitioner's § 2254 Petition is untimely. The court further finds, alternatively, that Petitioner's Grounds 1 and 2 are without merit and that Petitioner has procedurally defaulted all other issues which she raises in her § 2254 Petition. As such, the court finds that Petitioner's §2254 Petition for habeas relief should be dismissed in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Petitioner is **DENIED** and that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED**, in its entirety [ Doc. 2];

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, because Petitioner has made no showing of a denial of a constitutional right and for the reasons stated herein, the court will not grant a Certificate of Appealability.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 21st Day of November, 2005